UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DAVID JR. ROSS,                              Civil No. 06-2362 (JNE/JSM)

    Petitioner,

v.                                           **REPORT AND RECOMMENDATION**

R.L. MORRISON, Warden,

    Respondent.

---

JANIE S. MAYERON, United States Magistrate Judge

This matter is before the undersigned Magistrate Judge of the District Court on Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner seeks immediate evaluation for placement in a Residential Reentry Center ("RRC"),[1] or alternatively, home confinement, in accordance with the factors set forth in 18 U.S.C. § 3621(b), and without regard to Bureau of Prison ("BOP") Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures*, December 16, 1998. Pet.'s Resp. at 1-2, 5. The Government has filed a response to the Petition stating that the BOP is not required to consider an inmate for transfer any time the inmate requests such consideration. Gov't Resp. at 3. According to the Government, Petitioner's projected release date is not until February 4, 2011, and under Program Statement 7310.04, its current placement policy, the BOP will consider

---

[1] Until recently, RRCs were known as Community Corrections Centers ("CCCs") and commonly referred to as halfway houses.

him for RRC placement 11 to 13 months prior to his projected release date.  Gov't Resp. at 1-2.

The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court concludes that this Petition should be denied.

**I.     BACKGROUND**

Petitioner is a prisoner at the Federal Prison Camp in Duluth, Minnesota and his projected release date is February 4, 2011.  Gov't Resp. at 1.  Petitioner requests an immediate individual assessment by the BOP according the factors listed in 18 U.S.C. § 3621(b) and without regard to Program Statement 7310.04.  Pet.'s Resp. at 1.  In support of his request, Petitioner contends that Program Statement 7310.04, the RRC determination policy that is currently used by the BOP, is invalid on its face because it does not require the type of individualized assessment or permit consideration for RRC placement or home confinement at anytime during an inmate's sentence, as required by 18 U.S.C. § 3621(b).  Pet.'s Motion at 2, 4, Pet.'s Resp. at 2-4.  Petitioner also argues that Eighth Circuit cases, Fults v. Sanders, 442 F.3d 1088 (8th Cir. 2006) and Elwood v. Jeter, 386 F.3d 842 (8th Cir. 2004) mandate immediate consideration for placement in a RRC or home confinement.  Id.  Finally, Petitioner contends that application of Program Statement 7310.04 results in favoritism towards inmates with shorter sentences, in contravention of 18 U.S.C. § 3621(b) and BOP Program Statement 3420.07, and that sentencing disparities among races violate his right to equal protection under the laws and results in favoritism in RRC consideration.  Pet.'s Motion at 4-5; Pet.'s Resp. at 4.

In response, the Government contends that neither <u>Fults</u>, nor any other authority purports to impose on the BOP a requirement that it consider an inmate for transfer any time the inmate requests such consideration, and that the BOP's duty to help prepare an inmate for release by transferring the inmate to an RRC does not extend beyond the last six months of the prisoner's sentence. Gov't Resp. at 3. Thus, pursuant to its current guidelines, Program Statement 7310.04, the Government states that the BOP will consider Petitioner for placement in an RRC approximately 11 to 13 months before his projected release date. Program Statement 7310.04 at 7.

As to Petitioner's favoritism and equal protection argument, the Government asserts that Petitioner has failed to establish that he is a member of suspect class, and thus, under the rational basis standard, the BOP's current policy is rationally related to the legitimate government interest of effectively managing the prison system and utilizing the RRC program to transition prisoners back into society at the conclusion of their sentences. Gov't Resp. at 5-6. The Government also claimed that Petitioner has failed to establish that he has been deprived of a fundamental right based on class. <u>Id.</u> at 5.

## II. DISCUSSION

### A. History of Law on RRC Assignments

At issue in this case is the propriety of Program Statement 7310.04, guidelines enacted by the BOP in 1998 to address the transfer of inmates to RRCs or home confinement prior to release from custody from prison. In order to understand the BOP's reliance upon this Program Statement, it is necessary to review the history of the

3

statutes and case law addressing the placement of inmates in RRCs or home confinement.

The starting place is 18 U.S.C. § 3621(b), which provides that:

> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering—
>
> 1) the resources of the facility contemplated;
> 2) the nature and circumstances of the offense;
> 3) the history and characteristics of the prisoner;
> 4) any statement by the court that imposed the sentence –
>    - A. concerning the purposes for which the sentence to imprisonment was determined to be warranted;
>    
>    or
>    - B. recommending a type of penal or corrections facility as appropriate; and
> 5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.
>
> In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another. The Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse.

A different statute, 18 U.S.C. § 3624(c), directs the BOP to give special attention to the housing assignments of prisoners who are approaching the end of their

4

sentences, in order to help them successfully re-enter society upon being released from custody. This statute provides that:

> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last ten per centum of the term to be served under conditions that will afford the Prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

On February 14, 2005, the BOP adopted 28 C.F.R. §§ 570.20 and .21, which categorically limited an inmate's eligibility for pre-release to community confinement during the last ten percent of the prison sentence being served, not to exceed six months.

On April 6, 2006, the Eighth Circuit declared §§ 570.20 and 570.21 invalid and in conflict with 28 U.S.C. § 3621(b). <u>Fults v. Sanders</u>, 442 F.3d at 1092. The Eighth Circuit held that the BOP may not categorically determine the amount of time that a prisoner will be allowed to spend in community confinement, but in order to comply with 28 U.S.C. § 3621(b), must instead exercise its discretion on a case-by-case basis and consider the particular circumstances of the individual prisoner.

In light of the <u>Fults</u> decision, the BOP changed its position in the Eighth Circuit and now follows the BOP guidelines that existed before 2002 that are set forth in the Program Statement 7310.04, *Community Corrections Center (CCC) Utilization and Transfer Procedures*, December 16, 1998. Gov't Resp. at 2. It is this policy that Petitioner attacks as being unfairly applied as to him and invalid on its face.

**B.   Analysis of Petitioner's Claims**

First, Petitioner asserts that Program Statement 7310.04 is invalid on its face

5

because it does not require the type of individualized assessment dictated by 18 U.S.C. 3621(b). Pet.'s Resp. at 2. This Court disagrees. Program Statement 7310.04 explicitly states that a number of factors must be weighed in determining the length of RRC placement including, "individual needs and existing community resources". Program Statement 7310.04 at 7. This provision is consistent with § 3621(b) and the Fults decision that RRC determinations are to be based on a case-by-case analysis, taking into consideration the particular circumstances of the individual prisoner. Fults 442 F.3d at 1091; see e.g. Martinez v. R.L.Morrison, Civil No. 06-3124, 2006 WL 2911972, slip op. at 2 (D.Minn. Oct. 10, 2006).

In the alternative, Petitioner asserts that he is being denied the right to consideration for placement "at any time" as required by § 3621(b) because the BOP does not normally conduct evaluations for early placement in a RRC facility; instead it waits to consider transfer of an inmate until 11 to 13 months before the inmate's projected release date. Pet.'s Resp. at 3. As a preliminary matter, this Court notes that there is nothing in § 3621(b) that requires consideration for release to a RRC or home confinement at any time, as maintained by Petitioner. The language of §3621(b) states that "[t]he Bureau may at any time…direct the transfer of a prisoner from one penal or correctional facility to another." 18 U.S.C. § 3621(b). This language indicates that the transfer of prisoners from one institution to another is discretionary and not mandatory. Further, there is nothing in Program Statement 7310.04 that precludes evaluation for transfer to a RRC prior to 11 to 13 months before the projected release date. To the contrary, Program Statement 7310.04 provides that the BOP "may place an inmate in a [RRC] for more than the last ten per centum of the term, or more than six months if

6

appropriate". Id. at 4. It also states that although placement beyond 180 days is highly unusual, it is possible with "extraordinary justification". Id. at 8. In addition, the Program Statement states that release planning will begin "at the inmates first team meeting, normally the initial classification, and shall continue throughout the inmate's confinement," and goes on to state that "preliminary decisions regarding eligibility for [RRC] Programs are to be made well in advance of the last year of confinement." Program Statement 7310.04 at 7. It is only the "final and specific release preparation plan, including a decision as to [RRC] referral" that occurs "no later than 11 to 13 months before an inmate's projected release date." Id. (emphasis added) The text of the policy clearly allows and encourages consideration for RRC placement programs throughout an inmate's incarceration.

This Court also rejects Petitioner's contention that under Elwood and Fults he is entitled to an immediate transfer to community confinement and that causing him to wait until 11 to 13 months before his release date for an individual assessment violates his constitutional rights. No authority to which this Court has been alerted requires the BOP to conduct a RRC eligibility review or immediately transfer a prisoner to a RRC on demand by the prisoner. To the contrary, this Court finds, as have other courts in this District, that no inmate is entitled to an RRC review every time he requests such an evaluation. See e.g. Sisneros v. Anderson, 2007 WL 3512647 (D. Minn. Nov. 14, 2007); Swarzentruber v. Holinka, 2007 WL 3237637 (D. Minn. Oct. 30, 2007); Carter v. Federal Bureau of Prisons, 2006 WL 1791275 (D. Minn., June 27, 2006); Fisher v. Morrison, 2006 WL 1716135 (D. Minn., June 20, 2006); Smith v. Morrison, 2006 WL 1716131 (D.Minn., June 20, 2006). In fact, the Elwood decision, upon which Petitioner

7

relies, does not give prisoners the right to an RRC evaluation or transfer at any time during their incarceration. Rather, the Eighth Circuit in Elwood found that the BOP has discretion to transfer prisoners at any time during their incarceration, but only has the duty to consider a transfer to a RRC in the last six months of a sentence. Elwood, 386 F.3d at 847 (finding that the BOP's duty to place prisoners in conditions that will prepare the prisoner for re-entry into the community "shall not extend beyond the last six months of the prisoner's sentence"); see also 18 U.S.C. § 3624(c). Furthermore, "[a]t no point in the Fults litigation has any court directed the BOP to transfer a specific inmate to an RRC. All Petitioner is entitled to under Fults is consideration for such a transfer in accordance with the procedures outlined in P.S. 7310.04." Rennicke v. Sanders, 2006 WL 1817089 (E.D. Ark. June 30, 2006); see also Sisneros, 2007 WL 3512647 at *4; McFadden v. Morrison, 2006 WL 2583417 (D. Minn. Sept. 06, 2006).

Petitioner also contends that the BOP's application of Program Statement 7310.04 demonstrates favoritism towards those inmates convicted of white collar crimes (who are Caucasian and have shorter sentences – e.g. less than 60 months) over those inmates convicted of drug crimes (who are African American, like himself, and Hispanic and are serving longer sentences – e.g. 140 months). Petitioner asserts that such favoritism violates 18 U.S.C. § 3621(b) and BOP Program Statement 3420.07[2], and Petitioner's right to equal protection. Pet. Mot. at 4-5; Pet. Resp. at 4. Petitioner maintains that this difference in sentencing means that the only inmates qualified for RRC placement will be the Caucasian inmates who arrive at the Duluth Prison Camp

---

[2]   The Court notes that there is no BOP Program Statement 3420.07. However, BOP Program Statement 3420.09 does prohibit BOP employees from showing favoritism or preferential treatment to one inmate, or group of inmates, over another.

8

with 15 months or less time to serve and are immediately eligible for RCC determination, where as Hispanics and African Americans that arrive at the Duluth Prison Camp with 120-month sentences are ineligible for any determination of RRC placement.  Id.  Petitioner argues that inmates like himself with longer sentences, "have been away from society much longer and will need more time to properly adjust back [into] society," but that the maximum RRC time (absent "extraordinary circumstances") is the same for both groups.  Pet. Mot. at 4.  Petitioner contends that the BOP cannot show that such a policy "makes sense".  Id. at 5.

This Court finds that neither the Program Statement nor the BOP's application of the Statement contravenes 18 U.S.C. § 3621(b) and BOP Program Statement 3420.09 prohibition on favoritism or violates Petitioner's right to Equal Protection under the law.  First, contrary to Petitioner's assertion that inmates with shorter sentences receive the same 6-month placement as those with longer sentences, not only did Petitioner provide no evidence to support this claim, but Program Statement 7310.04 states the opposite: "Ordinarily, inmates with shorter sentences do not require maximum CCC placement due to reduced transition needs."  Program Statement 7310.04 at 7.  Second, to the extent that Petitioner is arguing that the BOP should give prisoners with extended sentences longer than six months of RRC time, Congress has already spoken on that issue.  As discussed above, pursuant to 18 U.S.C. § 3624(c), the BOP's duty to consider a transfer to a RRC does not arise until the last six months of an inmate's sentence.  Elwood, 386 F.3d at 847.  Third, a blanket decision to grant inmates with longer sentences longer RRC time across-the-board is directly at odds with the Eighth Circuit's decision in Fults.  442 F.3d at 1091.  Under Fults, the BOP is required to apply

9

case-by-case consideration of each prisoner's characteristics and disapproves of categorical determinations of RRC time.

Finally, as to Petitioner's equal protection claim, he appears to be asserting that Program Statement 7310.04 is applied differently to him, an African American convicted of a drug crime, than Caucasian inmates who were convicted of white collar crimes. "The Equal Protection Clause[3] generally requires the government to treat similarly situated people alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439, (1985). This protection applies to prison inmates. See Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 984 (8th Cir. 2004), citing Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999).

The first step in an equal protection case is determining whether Petitioner has demonstrated that he was treated differently than others who were similarly situated to him. See Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir. 1994), cert. denied, 513 U.S. 1185 (1995). (citation omitted). "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." Id. (citation omitted). Absent a threshold showing that he is similarly situated to those who allegedly receive favorable treatment, Petitioner does not have a viable equal protection claim. Id. (citation omitted). "The similarly situated inquiry focuses on whether the [claimant is] similarly situated to another group for purposes of the challenged government action." Id. (citation omitted). Thus, Petitioner must show that the Caucasians, African Americans

---

[3] Because 18 U.S.C. § 3621(b) and Program Statement 7310.04 are federal enactments, Petitioner's claim invokes the equal protection component of the Fifth Amendment's Due Process Clause. See Gavin v. Branstad 122 F.3d 1081, 1089 (8th Cir. 1997) ("Because the PLRA is a federal enactment, we are concerned here with the equal protection component of the Fifth Amendment's Due Process Clause.").

10

and Hispanics are similarly situated with respect to the challenged action, i.e. placements into a RRC at an earlier date or for a longer period.

Assuming that Petitioner can meet this threshold showing, then the Court examines the regulation to determine if it "is rationally related to a legitimate state interest." See City of Cleburne, 473 U.S. at 440; Gavin v. Branstad, 122 F.3d 1081, 1090 (8th Cir. 1997) ("Because neither a fundamental right nor a suspect classification is at issue here, we apply rational basis review"), cert. denied, 524 U.S. 955 (1998).[4]

---

[4] "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." City of Cleburne, 473 U.S. at 440 (citations omitted)

* * *

The general rule gives way, however, when a statute classifies by race, alienage, or national origin. These factors are so seldom relevant to the achievement of any legitimate state interest that laws grounded in such considerations are deemed to reflect prejudice and antipathy-a view that those in the burdened class are not as worthy or deserving as others. For these reasons and because such discrimination is unlikely to be soon rectified by legislative means, these laws are subjected to strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest. (citations omitted)

Id. See also, Gavin, 122 F.3d at 1090 ("We generally presume legislation to be valid, and we will uphold it against an equal protection challenge if its classifications are rationally related to a legitimate governmental interest. Legislation that employs a suspect classification or impinges on a fundamental constitutional right merits stricter scrutiny and will survive only if it is narrowly tailored to serve a compelling governmental interest.") (citations omitted). Consequently, "a racial classification [imposed by government in the context of a prison setting] ... must be analyzed by a reviewing court under strict scrutiny." See Johnson v. California, 543 U.S. 499, 505 (2005). (citation omitted). The strict scrutiny standard requires the party seeking to uphold a statute that expressly discriminates on the basis of race to advance an "exceedingly persuasive justification" for the challenged classification. See Personnel Adm'r of Massachusetts v. Feeney, 442 U.S. 256, 273 (1979).

Here, Program Statement 7310.04 is not a racial classification; rather it is racially neutral on it face, and therefore, Petitioner is making disparate impact claim which is subject to the rational basis test. That is, Petitioner is claiming that because inmates with shorter sentences (Caucasians) are treated differently than inmates with longer

Petitioner's equal protection claim fails because he has not demonstrated that he was treated differently than others who were similarly situated to him, or that the RRC program is not rationally related to a legitimate government interest.  While Petitioner claims Caucasians are similarly situated to African Americans such as himself at the Duluth Prison Camp, all that he has provided in support of this claim is that he and Caucasians inmates are at the prison.  He has not shown that Caucasians with similar sentences to him are being treated more favorably in the application of Program Statement 7310.04.   See Rouse, 193 F.3d at 942-43 (finding that inmate had not presented court with any evidence showing that other inmates following other religions

---

sentences (African Americans and Hispanics), the policy in it application has a disproportionate negative impact on African Americans and Hispanics.  With respect to disparate impact claims, the Supreme Court has found:

> [W]e have not held that a law, neutral on its face and serving ends otherwise within the power of government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another. Disproportionate impact is not irrelevant, but it is not the sole touchstone of an invidious racial discrimination forbidden by the Constitution. Standing alone, it does not trigger the rule, McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations.

Washington v. Davis, 426 U.S. 229, 242 (1976); see also Devoil-El v. Groose, 160 F.3d 1184, 1187 (8th Cir. 1998) (finding that under an Equal Protection analysis, "disparate impact alone, without the showing of intent to discriminate, will not "trigger the strictest level of scrutiny.  An argument relating to the impact of a classification does not alone show its purpose.") (citations and marks omitted); U.S. v. Clary, 34 F.3d 709, 712 (8th Cir. 1994) ("[E]ven if a neutral law has a disproportionate adverse impact on a racial minority, it is unconstitutional only if that effect can be traced to a discriminatory purpose. Discriminatory purpose 'implies that the decisionmaker, in this case [Congress], selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group.'") (citations omitted).  No evidence has been presented to show that the BOP enacted Program Statement 7310.04 with a discriminatory purpose.

were not been similarly limited in their practice of worship); Klinger, 31 F.3d at 731 (rejecting equal protection claim by female inmates where relevant men's prison was not similarly situated to the women's prison because of differences between the inmates). In fact, by his own admission, his claim of differential treatment is based on differing lengths of sentences of the inmates over which the prison has no control – that is, those with shorter sentences get the same amount of RRC placement as those with longer sentences – and not because of similarity of the inmates but for race.

Moreover, Petitioner has offered no evidence to establish that the RRC program is not rationally related to a legitimate government interest, except to state that "it does not make sense." The evidence before this Court establishes that Program Statement 7310.04 is designed to effectively manage the prison system, while at the same time transition prisoners back into society before the conclusion of their sentences. For example, the Program Statement describes its purpose and scope as follows:

> CCCs provide an excellent transitional environment for inmates nearing the end of their sentences. The level of structure and supervision assures accountability and program opportunities in employment counseling and placement, substance abuse, and daily life skills. One reason for referring an inmate to a CCC is to increase public protection by aiding the transition of the offender into the community. Participating in community-based transitional services may reduce the likelihood of an inmate with limited resources from recidivating, whereas an inmate who is released directly from the institution to the community may return to a criminal lifestyle. While clearly dangerous inmates should be separated from the community until completing their sentences, other eligible inmates should generally be referred to CCCs to maximize the chances of successful reintegration into society.

Program Statement 7310.04, p. 1.

Similarly, the guidelines for referral state in the Program Statement indicate that the "ultimate goal is to maximize each eligible inmate's chances for successful release

and a law-abiding life." Id., p. 8. This Court finds that a mechanism which assists in the transition of inmates back into society is a legitimate governmental interest and that Program Statement 7310.04 is reasonably related and designed to achieve that interest. For all of these reasons, Petitioner's equal protection claim should be dismissed.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

The Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be DENIED and the Petition be DISMISSED WITH PREJUDICE. To the extent Petitioner requests a RRC eligibility determination without regard to 28 C.F.R. §§ 570.20 and 570.21, his request is moot. To the extent Petitioner seeks immediate transfer to a RRC or immediate determination of his RRC eligibility date, the Petition should be denied. To the extent Petitioner is seeking a writ of mandamus and injunction, the Petition should be denied.

Dated: January 24, 2008

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 11, 2008,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.